Good morning, your honors. Mr. Weinberg, good morning. Thank you, sir. May I reserve two minutes for rebuttal? You may. Thank you. This appeal involves multiple procedural challenges to the district court's rejection of a plea agreement that would have called for a guideline between 46 and 57 months. The court instead imposed a sentence of nine years on Mr. Acevedo based on a combination of guideline increases and largely on the basis of an upward variance that we contend was predicated on two impermissible factors that I want to address during the time allotted. The first factor was the court's reliance and the court was very explicit that the impact on the judiciary, how that affected the public trust, the image of the judiciary is a factor in the upward variance. Well, these factors, the guidelines say in guideline 5K2.7, are inherent in the crime. This is a crime of judicial bribery. It didn't result in a guideline calculation of 12 to 16 months, which is base offense level 12, the baseline of bribery guidelines. There were multiple adjustments that were imposed first by agreement and then by the judge. There was a four-level increase because the public official held a sensitive position. There was another two levels for multiple payments. There was another eight levels imposed by the judge. The parties agreed to six for the amount of the bribe. There was four levels for all. In other words, the guidelines took what would have been a one-year sentence or a two-year sentence and required an imposition of a five or six or seven-year sentence, depending on the guideline decisions of the judge. Mr. Weinberg, there can be exceptional cases where all of those factors do not adequately address the severity of the crime. That seemed to be the view that the judge took here. There can, Your Honor, but the judge relied so heavily on the factors inherent in any case, the loss of faith, the loss of trust, that that reliance by itself on factors inherent in the guidelines ought to require re-sentencing. Well, couldn't the nature of the bribery create an unusual breach of trust? It could as an abstraction. So the fact that he characterized these facts as justifying a variance because of the effect on the public's confidence in the judiciary wouldn't necessarily be error if there were reasons to think that this was the kind of case that would unusually affect that. Then it wouldn't be inherent. Absolutely. As a matter of law, if it's unusual, it would be outside the discovery of the parties. So isn't it unusual for the bribery to involve the contemplated promotion of the judge to an appellate court? That objective was so speculative. It was a statement that now you're just going with the facts. But if the facts bore out that that was a goal of the bribery scheme, wouldn't that make it an unusual case where it wasn't just to fix a particular case, but was to elevate that corrupt judge to the next level of the bench? Well, I first contend that the facts don't support it. But even if they did, it does not fall outside the heartland. Well, that couldn't be a heartland case. I mean, not every case of judicial bribery is for the purpose of elevating the judge to a higher level. No, but the cases that take a guideline above it, which are quoted in footnote 19 of our brief at page 46, are cases where there's multiple cases that affects multiple millions of dollars. This would be putting a corrupt judge in charge of the appeals of all cases. So that would create, potentially, an unusual circumstance where the threat to the judiciary would be higher than in the ordinary case of fixing a single case. It would certainly be unusual if this judge, in fact, was nominated, if this judge, in fact, was selected for an appellate position. It never went beyond that. That was the objective of the whole bribe. That was the objective of the judge. But they had one meeting. The judge never applied for a judgeship, never was nominated. There was no- So what? Isn't the true measure of culpability here what the judge wanted, and then what Acevedo was willing to try to do in response to his demand? I mean, whether they could actually achieve the objective does not seem to be an adequate measure of culpability. It is what your client was willing to do in order to induce the judge to do what Acevedo wanted. If there was evidence of that willingness, what the evidence was, a single meeting with somebody that knew the governor without any intent by that middleman to make a nomination, and without even an application by the judge. What about the nature of the community? Is the judge entitled to take that into consideration, the fact that this is a small community, and that bribing a judge has a lot more impact on society, where he will be acting as a judge? Respectfully, that's why a guideline that's otherwise one year is four or five years. It's because of the nature of a judicial bribe, and it would affect the judicial- I don't think they take into account what I just said. I think it affects the public image in every community. But a small community, the impact is a lot more than where you're talking about a nationwide bribe, say, for example. It remains, under the language of the guidelines, inherent in the fact that the man- and no one is contesting that this is a serious offense, but the guidelines account for judicial bribery with multiple levels of increases that take a one-year sentence and make it five years. Here, in addition, the judge relied on a second impermissible factor, which is that she extrapolated from acquittals and dismissals and findings of no probable cause, what she called a pattern of corruption. And that pattern of corruption, she said during her sentencing findings, that she felt that if there was someone other than Acevedo that didn't have his economic status, that didn't have his political influence, that he would not have been acquitted of these cases. She said that he had a record of arrest. This is on Appendix 198 and Appendix 172 that she said leads me to the conclusion that if you'd properly gone through the judicial system, you'd have convictions. Well, she predicated the upward variance not only on the factors of the effect on the public image, not only on the facts of the case with the attempt to promote if that was proven, but on an assumption that was not based on facts, not even based on the profit of the prosecutor. In fact, three judges from different districts, and this is set forth in Appendix 209, were brought in, he was acquitted of the brandishing of the weapons, he was dismissed on the threats, and he was acquitted of the threats and a no probable cause finding on the weapon. Yet the judge made a conclusion that it infected her bases for the upward variance. She concluded that there was a pattern of corruption without any evidence. The Mesa Criolla incident, didn't the court specifically cite a letter from the restaurant owner who was the victim of the assault who described what had happened to him? And what happened to him was exactly what Mr. Acevedo had threatened would happen to him. The court deemed that a reliable representation of what had happened by the owner of the restaurant. Why isn't that at least reliable enough to conclude that that incident did indeed occur? One, it was a letter, I believe, by the off-duty policeman who was involved in the incident. I thought there was a letter from the owner. The owner made a complaint that resulted in a finding of no probable cause, again, by an independent judicial officer. The officer, I think his name was Nelson Perez, the judge said she wasn't even sure it was an appropriate basis for sentencing. But it wasn't tested. He wasn't a witness. Although they relied on the detention hearing that we contended wasn't part of the sentencing proceedings, that neither the owner nor the officer testified. The detention proceeding relied on by the sentencing judge was a prosecutor's proffer about the Mesa incident which occurred two and a half years before the start of this alleged offense. It wasn't relevant conduct. It wasn't part of a pattern. There was no evidence of corruption. And yet the judge repeatedly assumed that Mr. Acevedo did something to compromise or corrupt the findings of acquittal, the dismissals, the no probable cause. Acquittals mean something. Dismissals mean something. There needs to be proof before you superimpose a conclusion that because this man bribed one judge, he therefore engaged in a pattern of corruption. There's simply no evidence to support those conclusions. Let me just ask you about two other issues. Am I right that if this falls within the otherwise extensive conduct, and I recognize you say it doesn't, that the question of who's a participant does not matter? Yes, sir. Okay. And then the second issue is on the amount. I'm trying to understand your argument. There was a, in the, the colloquy at the sentencing hearing, there was a discussion about the start date for the appointment. Yes. Which I take it you're still raising now? Absolutely. Okay. There's a separate issue as independent of the start date, no matter when it started. As I understand you to be arguing, because there was such a question as to whether the appointment could be consummated by the actors involved in the conspiracy, that you have to discount the amount by some probability of success or something like that so that you can't just simply assume the salary of the job is the amount of the bribe. Is that right? I think there were two different subordinate issues. One is there was proof of a discrete amount of money that went to the judge for dinners and motorcycles and tax payments that were below, there were about $65,000. That was what the government and the defendant both agreed to. The judge, Sue Esponte, was seeking to increase it two levels. She used the salary of a judge times eight years. The contention is it was too speculative to be a basis. But what I don't understand is, does that mean then we give no value to that aspect of the deal? It means that in this case, on these facts, where a judge never applied for a position, where the position wasn't open to him, that you can't say, well, he would have got a position. No, I understand that. But I'm saying, do you then say we give no, it seems one could conclude from the record that it was important to the judge that the scheme involved something to help assist him become an appellate judge. Yes, that was. As I understand it, what value should be attributed to that aspect of the deal, since it seemed important to the deal? Zero dollars? Well, you certainly can't quantify it to eight years when the judge didn't make it. Not my question, what value do you think it can be given? I think that it's non-quantifiable. Does that mean zero? Yes, when you have a discrete amount of bribes that is $65,000. Even when he says, but part of the deal has to be to make me an appellate judge, and we know that has a higher salary? But I think that's a hypothesis that I don't think is factually based. It's not a hypothesis that he wanted that as part of the deal. He did want it. Yes. But he never replied for it. I understand that. But in terms of what he wanted, he wanted assistance, and he got assistance. Well, I certainly think you have to, at minimum, judge, subtract the two years, 2013, 2014, the eighth and seventh year where he made no application and no judgeship was available. That even if he wanted a judgeship in the future, and even if it would have been $15,000 a year in increased salary, I don't think you can add years where the judge never made an application and there was no judgeship available. That takes the uncertainty of whether or not. So, rather than eight years, it would be six years, at a minimum? I would contend zero, but six years would be the maximum. And then my question is, if we did the six years plus the amount that we know he did get, don't you get to the same amount? You get to, if you add one and two, you get to more, to the same amount paid by the judge. But again. So, the only way that this could cash out in your client's favor is if we gave it no value? The only way is if you gave it no value because you had a quantifiable bribe and because there was no judgeship available, the judge never applied, and by the time the judge had some visibility, there was no chance he was going to get an appellate. Am I correct that the bribery, the crime of bribery is completed when the bribery is accepted? It doesn't necessarily have to go the one further step that you claim that he actually had to get the post? He didn't have to get the post, but he certainly, in my judgment, had to apply for it. There had to be an available judgeship. There had to be some probability or likelihood, something beyond hope, that would make this a quantifiable bribe where we could start saying X number of years times X dollars. Wasn't the judge found guilty here of bribery at the state? The judge was found guilty. I think he was found guilty at a separate federal trial. Federal trial, yes. And received a sentence only one year. Doesn't that decide that issue? Why are we arguing about whether there was bribery or not? I'm not arguing that. Well, I am. There was a plea by my client that he, to a 46 to 57 month agreement where the government agreed it was a $65,000 value. The government agreed that there should be less than five people. And the court, sua sponte, without proper notice, I would contend, went back to a bail transcript, back to a prosecutor's proffer, and doubled the sentence. And I think on any number of grounds, the upward variance was based on grounds that ought to be reversed with reason. Was it the same lawyer in both cases? No, Your Honor. No. In fact, there was nobody at the judge's trial defending my client. The defense was trying to blame my client, and the government, of course, was prosecuting a co-schemer theme. The judge was convicted and got a sentence despite his being the public official, but it was only one year greater than that imposed on Mr. Acevedo. So we would respectfully request that the court remand for resentencing. Thank you. Thank you very much. Mr. Reyes, good morning. Juan Reyes on behalf of the United States. Your Honor, it is undisputed in this case that one of the main objectives of Acevedo's bribery conspiracy was to provide an appellate seat for the judge. And he not only made it one of the main objectives of his conspiracy, but he took significant steps to achieve that objective. And this is clear from the record. For example, there is information on the record from the co-defendant's trial of an email that Acevedo sent to Leto informing him. This was in December 2012. This was the day before the golf tournament. He informed him as follows. He said the big chief, which meant the then governor, has already been spoken to for Acevedo's thing. And if he, meaning Acevedo, wants to, he should go and corroborate that and greet him at 10 a.m. This is at docket entry 208, page 156. Leto explained that Acevedo's thing was the appellate seat. This means that by December 29, 2012, somebody had already spoken to the governor regarding an appellate seat for the judge. The next day, the plan was for Leto to drive the judge to the golf tournament so that he would meet Analdi, which was one of the main players, to provide this. Counsel, is there any standard of all of speculativeness that applies in a situation like this? Suppose the judge demands something that is patently fanciful, not only a change in position, but I want to be assured that my salary will be doubled. And Acevedo says, Judge, I'm going to set about to do that. I'll get you a position, and I'll see to it that we do all that we can to convince the legislature that the salary should be increased. Would all of that still count? Although it seems patently fanciful that anything like that could ever happen. Does that matter? Or does it only matter what the judge wants and what the defendant promises to give? Well, Your Honor, first of all, I'd like to clarify that, as I was mentioning, based on the record and also on other facts that I want to clarify further on, there's no fanciful. But you seem to reject, as a general proposition, this sort of imposition by the appellant of some standard of likelihood of success, if you will, that what the judge wants could ever happen. And I'm asking you if it's appropriate to – if what they're doing is appropriate, what they're asking for. Based on the case law, both consummated and unconsummated bribes must be counted. The guideline says so, and the cases have affirmed that. The fact that the bribe may be factually impossible by some reason that the defendant does not know does not cause it to not be counted, if you will. And we cited case law to that effect. If you had a case where it was – which is not this case – where something was so fanciful, then you may have a problem then with regards to the conspiracy itself, whether there was an agreement, a meeting of minds, whether there's – because this is an agreement between two parties. We assume that they're reasonable when they meet and they have this meeting of the minds and create a conspiratorial agreement. This is something that I believe is assumed by the guidelines. Go ahead. You can finish. In this case, we don't have to go into the fringes of the fancifulness type of benefits that are offered. In this case, and I want to clarify something Brother Counsel said, with regards to the possibility of vacancies, there was information on the record. This is at page 107 of the appendix. It said that it had heard of appointments. It took judicial notice that there had been appointments to the appellate court, and the court said within these four years. Context shows that the court was referring to the four-year term of the then governor. And the court even said there has – the court said there has even been appointment to the Supreme Court of Puerto Rico. Further proving that there were vacancies available. So there is information to that effect. However, our argument is that even if there had been no appellate vacancies, as we cited in some case law in the brief, the fact that it may be factually impossible doesn't cause a Yes, Your Honor. So the thing I'm having trouble with is what was the agreement in the bribe? So one possibility was the agreement was you will make me an appellate judge, and his understanding was that at the end of this, they will make him one. I think it's the plea agreement. It doesn't quite read that way. Maybe it's the indictment. It says that the judge agreed to assist Mr. Acevedo Lopez in exchange for things of value, including assistance in being elevated to a position as an appellate judge. And what I'm trying to figure out is what do we do if we think the record shows that what he agreed to fix the case for was assistance in becoming an appellate judge as opposed to being made an appellate judge? Because, you know, as a judge, he's probably aware of the various hoops that one has to go through to get the appointment. And so the most maybe he thought he could get was assistance, recognizing that ultimately the governor is going to make that call. There's no allegation that anybody other than the participants named were in on the bribery scheme. So if we thought that what the record showed was simply that he did this in order to get assistance in becoming an appellate judge, how would we quantify that? Well, Your Honor, the guideline is broadly worded. It doesn't require for in order to count a bribe, it doesn't have to be a type of bribe that the defendant can all on his own be able to deliver without having anyone agree to it. And in this case, the governor. The guideline doesn't require that. The guideline says that you count anything of value that. But the thing here that he sought to obtain, you're saying it's the judgeship. I'm saying why wouldn't the more natural reading be what he sought to obtain was assistance in getting the judgeship. And what is the value of that? Well, based on what they agreed and based on the evidence at trial, how the cases decide this issue is by looking at what the judge would have received had the bribery scheme worked. He would have gotten assistance in becoming a judge, which is what he got. Had the bribery scheme worked. He would have gotten assistance for being a judge. It doesn't say he would get an appointment. He would have gotten the appellate seat because the bribery scheme was to get an appellate seat. Wasn't the judge, please go ahead and finish. The bribery scheme, what the judge wanted was not just some assistance that leads nowhere. The judge wanted an appellate seat and he knew that Acevedo was the man to deliver it. As I just cited, there's evidence that Acevedo had direct connections to the then governor. And Anhali was one of the main connections and he wanted an appellate seat. And if the bribery scheme had worked, what he would have received was an appellate seat. What he received right now was just assistance. Assistance that led nowhere because of what happened in April 2015. That the judge was found with Leto. But that's what I'm saying is that we don't know. Because we don't know whether there would have been a vacancy. We don't know whether the governor would have gone through with the appointment. All we know and all that he could have reasonably thought one might conclude is that I'm going to get assistance to get me as far along as I possibly can. And if that happened, the scheme was worth it to him. And we don't think the judge would have entered into a scheme that isn't worth a dam like Your Honor mentioned. What Acevedo wanted was an appellate seat. Is it relevant to this issue of factoring the value of the appellate judgeship into the quantification of the value of the bribe? I mean, the judge himself was very much focused on, as I recall, the increased salary. I mean, he didn't just want the prestige of an appellate judgeship. I thought he himself noted the increased value. He talked about the burden that he was having to support his brother and his nephew. He needed more money. And that seemed to be what he wanted out of an appellate judgeship, perhaps more than just the prestige of it. Does the record support that focus by the judge himself on the increased monetary value of an appellate judgeship? It can reasonably be inferred, yes. He wanted to unburden himself from his economic constraints and also had this dream of retiring as an appellate judge. And that would have, and retirement would be more valuable. Obviously, if you retire, at the time you have a higher salary, right? Yes, yes, and the district court made a reasonable estimate here, conservative estimate, didn't even count the increase in retirement benefits that he would have received. Am I right? Yes. Am I right that the judge at one point, early on, says that he viewed this kind of case as something that you would do for $100,000? I think he said not even for $100,000. Not even for $100,000. So what do we make of that fact? Because obviously he thought the value of this whole scheme was $100,000 coming to him. And if you just look at the record and you add up what, $60,000 that he did get, plus the help for his sons getting the job, plus the thing, it seems to equate with his guesstimate of what he would be getting. Actually, he got, he would have gotten, had the scheme worked, he would have gotten much more. He would have gotten the appellate judgeship, the wining and dining, the income tax payments, his garage, jobs to his nephew and his brother who were an economic burden for him. This was more than $95,000. And those that you mentioned is not that he would have gotten. In fact, as I understand the record, he did have his tax debt paid. He did have construction of his garage, and somebody purchased a used motorcycle for him on behalf of Mr. Acevedo. Yes, Your Honor. This $100,000 conversation took place at one of the first meetings, did it not? Yes. And that's when he also said, I won't do this for $100,000. But then he also stated that what he really wanted was a seat on the appellate court. And then he also said his brother and his nephew were present, that he wanted jobs for them. Yes, that's correct, Your Honor. And those jobs have value to him. And actually, the court didn't count those jobs. But those jobs had value to him because they were an economic burden to him. He was subsidizing them. To the extent they had jobs, he didn't have to subsidize them. If I may briefly mention something else. I'm just wondering about the record so I understand. The district court's finding as to the value of the scheme, is that based solely on its calculation of the eight years? No. I understand that there's evidence in the record that would have permitted a conclusion that it was more than $100,000, adding up other things. But as I read it, he mentioned these other things. But then he says probation relied on the eight years of salary as an appellate judge. That's where I'm getting the number of $96,000 or whatever it is. So what are we supposed to do with that if we thought that calculation doesn't make sense, even though the record as a whole easily could support a conclusion of over $100,000? Are we supposed to vacate and remand? Which calculation wouldn't make sense? If we thought that the eight years, if we thought including that all eight years of salary is not a plausible number, that seems to be what the district court at the end uses as the number. Even though he mentions many, many other things, that if you add them up probably could get to that number. I understand. What are we supposed to do as an appellate court? The record reasonably supports a finding that the district court relied on those other numbers. However, there was really not a lot of discussion on those other numbers because those other numbers by themselves would not have gotten over the $95,000 threshold. So the focus of the discussion was those other numbers. However, the parties had stipulated. To $60,000. But to affirm, we need it to be above $95,000. And if, for example, you were to shave off two years, which is what Brother Counsel said, you would have $92,400 worth of appellate judgeship. And also you would have information on the record from what the parties stipulated, and the defense would have waived any argument against counting those other numbers that allow for this court to easily reach over the $95,000 threshold. That's what I'm asking. Can we affirm on a finding that the district court hasn't made? Well, we understand that the court did consider those numbers, but if this court were to understand otherwise, then still it would be able to count it because this court can affirm, it is well said, this court can affirm based on any grounds apparent from the record. And these grounds are apparent because the parties had stipulated to a number that would easily, with the six years and the income tax payments, and this is undisputed evidence in the pre-PSR. He did not object to those numbers. Counsel, perhaps I misunderstood you. I thought you conceded that without consideration of the value of the appellate judgeship, these other items that have been identified, the tax payments, the value of the work on the garage, the motorcycle, the wine and dining, you put all that together, you don't get the $95,000. I thought you conceded that. Yes, that's what I said, but what I was speaking right now was that if you shave off the two years, not if you count zero, if you shave off two years from the appellate judgeship and arrive at six years of appellate judgeship for counting value, you would easily still go over the $95,000. That's what I meant. Okay, but not just with the six years, but six years plus what is also manifested in the record. The six years plus what is manifested in the record, correct. And we don't have to send it back to the district court for it to make a judgment as to what its valuation would be. Certainly not, Your Honor, because in this case, as I mentioned, the parties had stipulated to a number, so they would have waived any argument to the contrary, and also this is unobjected information in the pre-sentence report. If I may briefly speak about the… I think your time is up.  Thank you, Your Honors. We'll take it on the brief. Thank you, Your Honor. One is the indictment, as well as the plea agreement, talks about assistance, multiple overt acts, you know, make the allegation that the judge wanted assistance rather than the judge expecting the judgeship or that Mr. Acevedo could produce the judgeship. That's consistent with the evidence where there were three attempts to have a single meeting, two of them the judge didn't go to at the golf, he sat in his car, he went to a single meeting of a businessman who testified at the judge's trial that he never intended to recommend Judge Acevedo for this position. The record is unclear as to whether there was or was not an opening. The judge, Judge Delgado, said there was an opening. The defense said at the same appendix cited by the prosecutor that there was no openings and that there was no evidence of an opening. The six years, I would contend, are as speculative as the seven or eight in the context of a judge who never made an application for a judgeship. And the guidelines talk about an objective standard. They talk about value being anything obtained, which is $65,000, and some assistance or some start of assistance that couldn't be quantified absent more conduct, like an application, or to be obtained. Again, an objective factor. To be obtained can't just be in the judge's head. Why? Because the issue is reasonable expectation. From whose perspective? From the judge's perspective. So it's in his head? If it's reasonable. But reasonable requires that you do something. You don't sit at home and wait for a governor to come and say you're a judge. You have to start taking steps towards the goal of being a judge. This judge didn't. For whatever reason, he never went beyond a single meeting with a businessman, not the governor. And, therefore, there's simply not a hard basis to say on an objective test that he either obtained or that it would be obtained, meaning the judgeship. He may have hoped, but it's not a reasonable expectation absent more. And so we respectfully say that the parties which entered a plea agreement based on the $65,000, that's quantifiable. That's real. That's obtained. And the elevation of the base offense level, because this was a corruption of a sensitive person, satisfies the.